## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

XINGRU LIN,                                )
                                           )
              Plaintiff,               )
                                           )
          v.                       )          Case No. 1:16-cv-00645 (CKK)
                                           )
DISTRICT OF COLUMBIA, *et al.*,            )
                                           )
              Defendants.              )
_____)

### DEFENDANT THE DISTRICT OF COLUMBIA'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant the District of Columbia ("the District), by and through undersigned counsel, hereby moves the Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing certain claims asserted in Plaintiff's Third Amended Complaint.

Plaintiff alleges 22 separate causes of actions against the District of Columbia and various named individual officers of the Metropolitan Police Department (Plaintiff has combined several causes of action into eleven enumerated Counts):

1. "Wrongful arrest" on February 15, 2016 in violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count I),

2. "Wrongful arrest" on April 12, 2016 in violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count I),

3. "Excessive force" on February 15, 2016 in violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count I),

4. "Retaliatory arrest" on February 15, 2016 in violation of Plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983 (Count I),

5. Common law false arrest on February 15, 2016 (Count II),

6.  Common law false arrest on April 12, 2016 (Count II),

7.  Negligence *per se* for violations of the Language Access Act on February 15, 2016 (Count III),

8.  Negligence *per se* for violations of the Language Access Act on April 12, 2016 (Count III),

9.  Negligence *per se* for violations of the Interpreter Act on February 15, 2016 (Count IV),

10. Negligence *per se* for violations of the Interpreter Act on April 12, 2016 (Count IV),

11. Negligent training and supervision of officers in association with the arrest on February 15, 2016 (Count V),

12. Negligent training and supervision of officers in association with the arrest on April 12, 2016 (Count V),

13. Assault and battery on February 15, 2016 (Count VI),

14. Negligent infliction of emotional distress ("NIED") on February 15, 2016 (Count VII),

15. NIED on April 12, 2016 (Count VII),

16. Intentional infliction of emotional distress ("IIED") on February 15, 2016 (Count VIII),

17. IIED on April 12, 2016 (Count VIII),

18. *Respondeat superior* (Count IX),

19. Violation of Title VI of the Civil Rights Act of 1964 on February 15, 2016 (Count X),

20. Violation of Title VI of the Civil Rights Act of 1964 on April 12, 2016 (Count X),

21. Violation of the District of Columbia Human Rights Act ("DCHRA") on February 15, 2016 (Count XI), and

22. Violation of the DCHRA on April 12, 2016 (Count XI).

The District seeks an order dismissing Claims 1-4, 7-12, 14, 15, and 17-22 against the District.  Additionally, the Court should dismiss Plaintiff's request for expungement of her arrest record, as this Court does not have jurisdiction to grant such relief.  The District explains the reasons for this request in the attached memorandum of points and authorities.  A proposed order is also attached.

DATED:  September 10, 2018                    Respectfully submitted

                                             KARL A. RACINE
                                             Attorney General for the District of Columbia

                                             GEORGE C. VALENTINE
                                             Deputy Attorney General
                                             Civil Litigation Division

                                             */s/ Michael K. Addo*
                                             MICHAEL K. ADDO [1008971]
                                             Chief, Civil Litigation Division Section IV

                                             */s/ Philip A. Medley*
                                             PHILIP A. MEDLEY [1010307]
                                             Assistant Attorney General
                                             441 Fourth Street, N.W., Suite 630 South
                                             Washington, D.C. 20001
                                             (202) 724-6626
                                             (202) 741-5920 (fax)
                                             philip.medley@dc.gov
                                             *Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| XINGRU LIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00645 (CKK) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant District of Columbia ("the District), by and through undersigned counsel, hereby moves the Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Claims 1-4, 7-12, 14, 15, and 17-22 against the District. Additionally, the Court should dismiss Plaintiff's request for expungement of her arrest record, as this Court does not have jurisdiction to grant such relief.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The allegations of the Third Amended Complaint are similar to those in the previous pleadings in this matter. During the relevant time, Plaintiff allegedly worked as a ticketing agent for a bus transportation company called "Focus Travel Agency." 3rd Am. Comp. ¶ 4. Plaintiff's place of employment is 513 H St. NW, and it also is the central location of most of the events alleged in the Third Amended Complaint. *Id.* ¶ 4. Plaintiff's claims stem from two separate alleged incidents involving officers of the District of Columbia Metropolitan Police Department ("MPD") that occurred on February 15, 2016 and April 12, 2016. *See generally Id*. Plaintiff alleges that she has limited understanding of English, and that her primary language is Fuzhou. *Id.* ¶ 2. Plaintiff also states that she is fluent in Mandarin Chinese. *Id.*

1

First, Plaintiff alleges that on February 15, 2016, she got into an altercation with a woman who Plaintiff claims repeatedly tried to sneak onto a bus despite being asked to leave by Plaintiff.  *Id.* ¶ 11.  The altercation allegedly started after the bus in question left and Plaintiff tried to take a picture of the woman with a cell phone.  *Id.* ¶ 13.  The woman allegedly grabbed at Plaintiff from behind, and Plaintiff pushed her away.  *Id.*  Both individuals called the MPD, and several officers arrived on the scene.  *Id.* ¶¶ 14-15.  Plaintiff was arrested, and her arrest allegedly involved MPD officers twisting her arm, forcing her onto a bench, putting her against a wall, pushing her down to the floor, and handcuffing her. *Id.* ¶ 19-21.  Plaintiff alleges that she "felt" as though the officers were kicking her back and shoulders.  *Id.* ¶ 21.  Plaintiff claims that she then waited "several minutes" before a Chinese interpreter arrived.  *Id.* ¶ 24.  Plaintiff claims that after watching closed circuit video, the MPD officers determined that Plaintiff did not act unlawfully and removed her handcuffs.  *Id.* ¶ 25. Plaintiff further claims that, through the interpreter, she told the MPD officers that she wanted to sue them and that after that declaration, she was handcuffed again and told that she was being arrested for assaulting police officers.  *Id.* ¶¶ 31-32.  Plaintiff was taken to the police station for processing before being taken to Howard University Hospital for her alleged injuries.  *Id.* ¶¶ 34-40.  Plaintiff claims that while at the hospital she was forced to undress in the presence of two male MPD officers.  *Id.* ¶ 43.  Plaintiff ultimately was not prosecuted on any charges.  *Id.* ¶ 47.

Plaintiff also alleges that on April 12, 2016 at approximately 11:30 a.m., she encountered a customer with an expired bus ticket, and she prevented him from boarding a bus.  *Id.* ¶ 51.  Unbeknownst to Plaintiff, this customer then called the MPD, and an MPD officer arrived on the scene sometime after 1:00 p.m. *Id.* ¶¶ 52-53.  Plaintiff claims that the

officer attempted to communicate with Plaintiff only in English and that Plaintiff called upon

an upstairs neighbor to assist in translating.  *Id.* ¶¶ 54-57.  Plaintiff claims that the officer

stated that he only wanted to bring her to the police station so that she could make a statement

and that once she came out from behind her closed office space, the officer arrested her.  *Id.* ¶¶

58-60.  Plaintiff was eventually not prosecuted for any crime.  *Id.* ¶ 65.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise

a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555

(2007).  The Supreme Court has identified a "two-pronged approach" that a trial court should

utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  While a trial court generally must consider a plaintiff's factual

allegations as true, the court should first "identify pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, the basic

pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Id.*  (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual

allegations," it "should assume their veracity and then determine whether they plausibly give rise

to an entitlement to relief."  *Id.*  The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.  The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are merely consistent with a

> defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.

*Id.; See also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting

passage with approval).  In other words, a plaintiff's factual allegations must allow a court to

draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual

allegations are proven true.  *See Matrixx Industries, Inc. v. Siracusano*, 563 U.S. 27, 45-46

(2011).

## ARGUMENT

### I.   Plaintiff has failed to Adequately Plead a § 1983 Claim Against the District (Claims 1 through 4)

Plaintiff attempts to assert against the District claims of violations of her 4th Amendment

and 1st Amendment rights pursuant 42 U.S.C. § 1983.  As with her previous pleadings in this

matter, Plaintiff fails to establish any claim for municipal liability against the District.  In order

to assert a claim against the District pursuant to § 1983, Plaintiff must adequately allege "that a

policy or custom of the District of Columbia caused the constitutional violation" in order to

maintain the claim.  *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  In

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court

made clear that the actions of an employee are not enough to impose liability for constitutional

violations on a municipality:

> [A] local government may not be sued under § 1983 for an injury inflicted solely
> by its employees or agents.  Instead, it is when execution of a government's policy
> or custom, whether made by its lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Id*. at 694; *see also Feirson v. Dist. of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) ("To

impose liability on the District under 42 U.S.C. § 1983, [the plaintiff] must show not only a

violation of his rights under the Constitution or federal law, but also that the [District's] custom
or policy caused the violation." (internal quotation marks omitted)).

Plaintiff's Claims 1 through 4 must be dismissed as to the District because they fail to do
"more than recite the requisite causal elements of custom or policy liability." *Smith v. Dist. of
Columbia*, 674 F. Supp. 2d 209, 212 (D.D.C. 2009). When establishing a claim for municipal
liability under § 1983, a plaintiff must provide factual content sufficient to demonstrate and
identify a particular practice or policy. *See Bell v. Dist. of Columbia*, 82 F. Supp. 3d 151, 159
(D.D.C. 2015) ("Plaintiff's complaint in this case lacks the kind of 'factual content' to support
her allegation of an increasing number of complaints . . . ."). In this case, Plaintiff fails to plead
sufficient factual content. Indeed, Plaintiff fails to identify the character of the specific custom
or policy or the source of the custom or policy. *See Collington v. Dist. of Columbia*, 828 F.
Supp. 2d 210, 215 (D.D.C. 2011) (dismissing *Monell* claim because "the complaint sets forth no
factual allegations regarding the existence and enforcement of a municipal policy, custom or
practice that directly caused a violation of" the plaintiff's constitutional rights). In fact, beyond
her own circumstances, Plaintiff only identifies one other instance of MPD officers allegedly
violating an individual's 4th Amendment rights. 3rd Am. Compl. at ¶ 90; *but see Estate of
Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir.2005) ("[Three] incidents do not amount to a
widespread practice that is permanent and well settled so as to constitute an unconstitutional
custom or policy about which the sheriff was deliberately indifferent." (quotation marks
omitted)).

Moreover, Plaintiff asserts nothing more than conclusory statements that the District "has
failed to adequately train, supervise, and oversee its officers and enforce its own policy
guidelines, leading to a custom and practice of widespread and illegal arrests without probable

cause . . . widespread and illegal excessive use of force . . . [and] widespread and illegal violations of individuals' First Amendment rights . . . ."  3rd Am. Compl. at ¶¶ 106, 118, 131. Plaintiff does not invoke any specific policies of the District or claim that the MPD officers were operating pursuant to such policies.  In fact, Plaintiff appears to be arguing that the MPD officers were operating *contrary* to official MPD policies and guidelines when they engaged in allegedly unconstitutional practices.

Because the Second Amended Complaint fails to adequately plead a § 1983 claim against the District, the Court should dismiss Claims 1 through 4.

## II.   Plaintiff has failed to state a claim of negligence *per se* for violations of the Language Access Act (Claims 7 and 8)

Plaintiff attempts to assert against the District claims of negligence *per se* for alleged violations of the Language Access Act on February 15, 2016 and April 12, 2016.  In order to assert a claim of negligence *per se,* a claimant must show (1) that there is "a particular statutory or regulatory standard [which was] enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred," and (2) "the plaintiff can establish his relationship to the statute."  *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982) (quoting *Richardson v. Gregory*, 281 F.2d 626, 629 (D.C.Cir. 1960)).  "The decision to adopt from a statute a standard of care to be applied in determining common law negligence is 'purely a judicial one, for the court to make.'"  *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 580 (D.C. 1996) (quoting *Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1274 (D.C. 1987)).  Additionally, "the statute or regulation relied on must promote public safety and have been 'enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred.'"  *Id.* (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 557 (D.C. Cir. 1993)).

In her Second Amended Complaint, Plaintiff claims that the MPD officers violated the Language Access Act, but Plaintiff fails to identify what specific statute she believes the MPD officers violated on February 15, 2016 and April 12, 2016.  Plaintiff mentions D.C. Code § 2-1934(a)(1), which states that covered entities, such at the MPD, shall establish a language access plan by regulation.  3rd Am. Compl. at ¶ 79.  Yet, in the very next paragraph, Plaintiff quotes from the MPD's Language Access Plan, clearly demonstrating that the MPD has complied with the Language Access Act.  *Id*. ¶ 80.  Furthermore, Plaintiff fails to allege facts to establish that the purpose of the Language Access Act is to promote public safety.  The actual text of the Language Access Act does not mention the word "safety."  D.C. Code §§ 2-1931 *et seq.*

Additionally, the preamble of the original Language Access Act of 2004 states:

> AN ACT to provide greater access and participation in public services, programs, and activities for residents of the District of Columbia with limited or no-English proficiency by requiring that District government programs, departments, and services assess the need for, and offer, oral language services; provide written translations of documents into any non-English language spoken by a limited or no-English proficient population that constitutes 3% or 500 individuals, whichever is less, of the population served or encountered, or likely to be served or encountered; to ensure that District government programs, departments, and services with major public contact establish and implement a language access plan and designate a language access coordinator; to require that the Office of Human Rights coordinate and supervise District government programs, departments, and services in complying with the provisions of this act and establish the position of Language Access Director for this purpose; and to amend the District of Columbia Latino Community Development Act and to repeal the Bilingual Services Translation Act of 1977 to repeal redundant provisions.

LANGUAGE ACCESS ACT OF 2004, 2004 District of Columbia Laws 15-167 (Act 15–414).

There is no legal authority suggesting that the purpose of the Language Access Act is public safety.

Because the Second Amended Complaint fails to adequately plead a claim for negligence *per se* against the District for violations of the Language Access Act, the Court should dismiss Claims 7 and 8.

### III.   Plaintiff has failed to state a claim of negligence *per se* for violations of the Interpreter Act (Claims 9 and 10)

Plaintiff attempts to assert against the District claims of negligence *per se* for alleged violations of the Interpreter Act on February 15, 2016 and April 12, 2016.  Plaintiff refers specifically to D.C. Code § 2-1902(e)(1) and (e)(2), which state:

> (e)(1) Whenever a communication-impaired person is arrested and taken into custody for an alleged violation of a criminal law, the arresting officer shall either:
>> (A) Procure a qualified interpreter to translate or interpret information to and from the person during any custodial interrogation, warning, notification of rights, or taking of a written or oral statement; or
>> (B) Have a qualified interviewer conduct the custodial interrogation, warning, notification of rights, or taking of a written or oral statement in a language other than English, including sign language.
>
> (2) No person who has been arrested but who is otherwise eligible for release shall be held in custody pending arrival of a qualified interpreter or qualified interviewer.

Plaintiff claims that the MPD officers violated the Interpreter Act on February 15, 2016 and April 12, 2016 when they arrested Plaintiff before the arrival of any interpreter.  3rd Am. Compl. at ¶¶ 154-157.  Much like Plaintiff's claim regarding the Language Access Act, Plaintiff has failed to plead that the purpose of the Interpreter Act is to promote public safety.  However, Plaintiff has also failed to state that the MPD officers ran afoul of the Interpreter Act in any way. The statutes cited by Plaintiff place no prohibition on arresting an individual before the arrival of an interpreter.  In fact, § 2-1902(e)(1) begins with a subordinate clause which clearly demonstrates that the statute is addressing the obligations of an arresting officer *once the communication-impaired person has been arrested and taken into custody*.  Moreover, even

assuming the truth of Plaintiff's allegations about the arrests on February 15, 2016 and April 12, 2016, it is clear that the MPD officers involved abided by the requirements of the Interpreter Act. On February 15, 2016, Plaintiff was provided with an interpreter "[s]everal minutes" after her arrest.  *Id*. at ¶ 24.  On April 12, 2016, once Plaintiff was arrested and brought to the police station, she was provided with interpretation service via Language Line.  *Id*. at ¶ 61.

Because the Second Amended Complaint fails to adequately plead a claim for negligence *per se* against the District for violations of the Interpreter Act, the Court should dismiss Claims 9 and 10.

## IV. Plaintiff's claim of negligent supervision and training of officers should be dismissed (Claims 11 and 12)

Plaintiff's claims of negligent supervision and training of officers should be dismissed because (1) Plaintiff has failed to state a claim, and (2) the claims are barred by the doctrine of sovereign immunity.

### a. Plaintiff has failed to state a claim for negligent supervision and training

Plaintiff attempts to assert claims for negligent supervision and training of the MPD officers pursuant to the arrests of February 15, 2016 and April 12, 2016.  Negligent supervision and training is not a theory of vicarious liability; rather, it is a theory of direct liability against the employer.  *See Phelan v. City of Mount Rainier*, 805 A.2d 930, 937 (D.C. 2002).  Establishing negligent supervision requires that a party "show that an employer knew or should have known its *employee* behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985) (emphasis in original).

Invoking the legal terms is insufficient to stave off dismissal of this claim.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").  Plaintiff fails to allege any specific facts about the

District's actual or constructive knowledge of dangerous or otherwise incompetent behavior.

Plaintiff merely makes conclusory statements about how the District "knew or should have

known that its Officers would behave in a dangerous, incompetent manner" when they arrested

Plaintiff on February 15, 2016 and April 12, 2016.  3rd Am. Compl. ¶¶ 162-165.  Plaintiff pleads

no specific facts alleging that the District knew or should have known that the MPD officers

were behaving dangerously or incompetently.  And since Plaintiff has failed to allege that the

District had any actual or constructive knowledge of dangerous or incompetent behavior by the

MPD Officers, Plaintiff also fails to allege that the District, "armed with that actual or

constructive knowledge," failed to adequately supervise or train the MPD officers.

Because the Second Amended Complaint fails to adequately plead a claim for negligent

training and supervision against the District, the Court should dismiss Claims 11 and 12.

**b.  Plaintiff has failed to state a claim for negligent supervision and training**

In the District of Columbia, "the doctrine of sovereign immunity acts as a bar to bringing

suit against the District . . . for its discretionary functions." *Nealon* v. *District of Columbia*, 669

A.2d 685, 690 (D.C. 1995).  The question of whether immunity is available under the doctrine

turns on whether the act complained of was discretionary or ministerial.  Acts that are purely

ministerial, giving the actor no discretion over their conduct, are not protected under this

doctrine. *Id.* at 690.  Although it is not always easy to discern whether an act is discretionary or

ministerial, the D.C. Court of Appeals explains the distinction as follows:

> Generally, discretionary acts involve the formulation of policy, while ministerial
> acts involve the execution of policy.  Discretionary acts have also been defined as
> acts that require personal deliberation, decision and judgment.  They generally
> have a broad public effect and call for a delicate balancing of competing
> considerations.  Where there is room for policy judgment and decision, there is
> discretion.  In contrast, ministerial acts require little or no judgment, and generally

constitute mere obedience to orders or performance of a duty in which the municipal employee has little or no choice.

*Id.* (internal quotations and citations omitted).  *See also Aguehounde* v. *District of Columbia,* 666 A.2d 443,447 (D.C. 1995) (citing *District of Columbia* v. *North Wash. Neighbors, Inc., 367* A.2d 143, 148 n. 7 (D.C. 1976) (whether a function is discretionary or ministerial is a question going to the subject matter jurisdiction of the trial court)).  It is a determination to be made by the trial judge, not the jury.  *See Daigle* v. *Shell Oil Co., 972* F.2d 1527, 1537 & 1539 (10th Cir. 1992); *see also District of Columbia* v. *Pace,* 498 A.2d 226, 229 (D.C. 1985) (internal citation omitted); *see also North Wash. Neighbors,* 367 A.2d at 148 n.7.

The D.C. Court of Appeals continues to uphold the District's sovereign immunity for discretionary functions because there are "compelling considerations supporting the doctrine." *Nealon*, 669 A.2d at 691 n. 5.  The Court has described some of the considerations as follows:

> (1) the preservation of the dividing line between legislative and judicial functions, (2) the prevention of "an unhealthy stasis in policy choices and decision-making," and (3) the recognition that for certain decisions made in the exercise of discretionary functions, "there is no reason to believe a jury would render a sounder decision than those officials chosen, qualified, and prepared to make them."

*Id*. (quoting *Chandler v. District of Columbia*, 404 A.2d 964,965-66 (D.C. 1979)).  In *Chandler*, the plaintiff claimed the District's closure of the firehouse closest to her home constituted negligence despite the District's implementation of a program closing a number of fire stations on a random, rotating basis for financial reasons.  *Chandler*, 404 A.2d at 965.  Discretionary immunity precluded the claim as the District's program was implemented based on government decision makers' policy considerations.  *Id*. at 966.

Here, Plaintiff asserts that the District is responsible for the training and supervision of the officers involved in the occurrences alleged in Plaintiff's Third Amended Complaint.  Similar

to the policy judgments protected by discretionary immunity in *Chandler*, the District's training and supervision policies balance various considerations, including safety, effectiveness, staffing, resource needs and limitations, and financial considerations and restrictions.  Thus, the District's decisions concerning training and supervision policies are policy judgments for which it is entitled to discretionary immunity.  *See Tucci v. District of Columbia*, 956 A.2d 684 (D.C. 2008).  In *Tucci*, the D.C. Court of Appeals considered the case of a couple who complained that the District failed to adequately enforce its municipal trash-collection regulations, allegedly resulting in a nuisance that devalued their real property.  956 A.2d at 690.  Recognizing the plaintiffs' argument as "simply a complaint about the level or extent of enforcement activity undertaken by the District," the D.C. Court of Appeals found that the decision was committed to agency discretion.  *Id*. at 682 (citing *Varig Airlines*, 467 U.S. 797, 819-20 (1984)); *Barron v. Reich*, 13 F.3d 1370, 1376 n. 3 (9th Cir. 1994) ("[A] decision about the extent of enforcement to be undertaken in a given case is also likely to be discretionary."); *Gillis v. Us. Dep 't of Health & Human Servs*., 759 F.2d 565,576 (6th Cir. 1985) ("The mechanism by and extent to which HHS 'monitors' as well as 'enforces' compliance fall squarely within the agency's exercise of discretion."); *Sager v. City of Portland*, 684 P.2d 600, 605 (Or. Ct. App. 1984) (upholding trial court's grant of directed verdict to municipality as discretionary immunity bared liability against municipality for failure to inspect and repair sidewalks).

Here, Plaintiff relies solely on the February 15, 2016 and April 12, 2016 occurrences to establish that its allegation that the District was negligent in training and supervising the defendant officers.  Moreover, the actions Plaintiff complain of with respect to the District are discretionary and therefore covered under the sovereign immunity doctrine.

Because Plaintiff's claims for negligent training and supervision against the District are barred by the doctrine of sovereign immunity, the Court should dismiss Claims 11 and 12.

## V.   Plaintiff has failed to state a claim of NIED (Claims 14 and 15)

Plaintiff asserts claims of NIED for both the February 15, 2016 arrest and the April 12, 2016 arrest.  To establish a claim for NIED, "a plaintiff must show that '(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable.'"  *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C. Cir. 2015) (quoting *rice v. District of Columbia*, 774 F.Supp.2d 25, 33 (D.D.C. 2011)).

Plaintiff's claim for NIED rests entirely on her use of conclusory descriptions of the MPD officers behaving "negligently" and engaging in "reckless and indifferent conduct" when they arrested her on February 15, 2016 and April 12, 2016.  3rd Am. Compl. at ¶¶ 181, 185. These conclusory statements are not sufficient to establish a claim for NIED.  Moreover, Plaintiff's factual allegations regarding the April 12, 2016 arrest cannot possibly make out a claim for NIED because she has failed to allege that suffered physical harm or was in a zone of danger as a result of any negligent behavior on behalf of the MPD officers.  NIED "is a cause of action based on physical harm, and although '[a] plaintiff need not show actual physical impact' to prove that a defendant negligently caused her distress, 'she must show that she actually feared for her [physical] safety as a result of [the defendant's] conduct.'"  *Asare v. LM-DC Hotel, LLC*, 62 F.Supp.3d 30, 34 (D.D.C. 2014) (quoting *Hollis v. Rosa Mexicano DC, LLC,* 582 F.Supp.2d 22, 27 (D.D.C. 2008)).  Plaintiff alleges that when she was speaking with Officer Williams on April 12, 2016, she "feared that if she did not do what the Officer instructed, she would go through a similarly violent and traumatizing experience as her February arrest."  3rd Am. Compl.

at ¶ 59.  Plaintiff clearly demonstrates that this alleged fear of physical danger was based on her memory of the February 15, 2016 arrest and not based on any allegedly negligent behavior of Officer Williams on April 12, 2016.

Plaintiff also fails to state a claim for NIED as to the February 15, 2016 arrest.  Although Plaintiff does allege actual physical harm with regard to that arrest, her factual allegations indicate that this harm came as a result of *knowing* and *intentional* conduct by the MPD officers. Specifically, Plaintiff alleges that she suffered "back, neck, and shoulder pain caused by the Officers during her arrest," *Id.* at ¶ 44, and that these injuries occurred as a result of the MPD officers alleged acts to place her in handcuffs – namely, twisting and grabbing her arms, pushing her against the wall and the floor, and kicking her, *Id.* at ¶¶ 19-21.  "Intent and negligence are regarded as mutually exclusive grounds for liability."  *Harris,* 776 F.3d at 916 (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003)).  In *Harris*, the Circuit Court of Appeals held that the plaintiff, who asserted claims of both NIED and IIED, failed to state a claim for NIED because he failed to distinguish between negligent and intentional acts and failed identify any specific act by the defendant that was negligent.  *Id.*  Plaintiff's Second Amended Complaint suffers from the same deficiency as in *Harris* and should therefore be dismissed.

Because the Second Amended Complaint fails to adequately plead a claim for NIED against the District, the Court should dismiss Claims 14 and 15.

## VI.   Plaintiff has failed to state a claim of IIED as to the April 12, 2016 arrest (Claim 17)

Plaintiff asserts claims of IIED for both the February 15, 2016 arrest and the April 12, 2016 arrest.  The Court, in its August 2, 2017 Memorandum Opinion granting in part and denying in part the District's December 7, 2016 Motion to Dismiss, held that Plaintiff met the threshold for stating a claim for IIED as the events surrounding the February 15, 2016 arrest.

14

However, in her Second Amended Complaint, Plaintiff also attempts to assert this claim as to the April 12, 2016 arrest.

To establish IIED a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *See Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984). Conduct rises to extreme and outrageous "only when the conduct goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (internal citations and quotation omitted). "This very demanding standard is infrequently met." *Cooke-Seals v. District of Columbia,* 973 F. Supp. 184, 186 (D.D.C. 1997). Improper police actions do not meet this standard unless the actions are truly egregious. *Compare Amons v. District of Columbia*, 231 F. Supp. 2d 109, 118 (D.D.C. 2002) (finding that the standard was met where the police unlawfully entered plaintiff's home, shot his dog, detained him for 22 hours, and permitted his property to be stolen); *with Smith v. District of Columbia*, 882 A.2d 778, 790 (D.C. 2005) (finding that the standard was not met where the officer applied an illegal choke-hold and jerked plaintiff's head so violently that his jaw broke in two places).

The Court previously found that the allegations of physical conduct during the February 15, 2016 arrest were sufficient to state a claim for IIED. However, Plaintiff alleges absolutely no conduct by MPD officers during the April 12, 2016 arrest that could possibly be described as extreme and outrageous. *See* 3rd Am Compl. ¶¶ 50-65. The D.C. Court of Appeals has held that with IIED claims the "ultimate question is whether 'the recitation of the facts to an average member of the community would arouse his [or her] resentment against the actor, and lead him [or her] to exclaim 'Outrageous!'" Assuming the truth of her allegations about the April 12,

2016, Plaintiff has alleged nothing more than that Officer Williams told her that he wanted to take her to the police station to make a statement but instead placed her under arrest. These allegations do not elicit a sense of outrage, and consequently, Plaintiff's IIED claim as to the April 12, 2016 arrest fails.

Because the Third Amended Complaint fails to adequately plead a claim for IIED against the District as to the April 12, 2016 arrest, the Court should dismiss Claim 17.

**VII.    Plaintiff's claim of "*respondeat superior*" is not a separate cause of action and is duplicative of Plaintiff's common law claims (Claim 18)**

Plaintiff asserts a separate claim of "*respondeat superior*" against the District, stating that the District should be held liable for the common law torts alleged against the individual MPD officers. *Respondeat superior* is not a separate cause of action; rather, it is a theory of vicarious liability. *See Search v. Uber Techs., Inc.,* 128 F.Supp.3d 222, 232 (D.D.C. 2015). Therefore, Plaintiff's claim of *respondeat superior* against the District is duplicative of the separately pleaded common law torts that are stated throughout the Third Amended Complaint.

Because *respondeat superior* is not an individual cause of action, the Court should dismiss Claim 18.

**VIII.    Plaintiff has failed to state a claim for violations of Title VI of the Civil Rights Act of 1964 (Claims 19 and 20)**

Plaintiff asserts claims of violations of Title VI of the Civil Rights Act of 1964 for both the February 15, 2016 arrest and the April 12, 2016 arrest. The law cited by Plaintiff states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d (2012 Repl.). Plaintiff lacks standing to assert a claim under Title VI. "[I]n order to bring a private action

under Title VI 'the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 418-19 (7th Cir. 1986) (overruled on other grounds by *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996)).  "The legislative history of Title VI . . . lends strong support to the conclusion that Congress did not intend to extend protection under Title VI to any person other than an intended beneficiary of federal financial assistance." *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1235 (7th Cir. 1980).  Plaintiff has pled only that the District of Columbia and the MPD received federal financial assistance.  3rd Am. Compl. at ¶ 9.  She has made no allegations about being the beneficiary of any specific federally funded program of the District or the MPD.  Therefore, Plaintiff has failed to establish that she has standing to bring a claim pursuant to Title VI.

Even if Plaintiff has standing to bring a claim under Title VI, she has failed to plead any factual allegations supporting a claim of discrimination.  "Discrimination claims pursuant to Title VI . . . are analyzed under the same standards as claims brought pursuant to Title VII of the Civil Rights Act." *Hajjar-Nejad v. George Washington Univ.*, 37 F.Supp.3d 90, 124 (D.D.C. 2014).  A plaintiff can state a claim of discrimination under Title VI by setting forth (a) evidence of direct discrimination or (b) evidence of disparate treatment that would trigger *McDonnell Douglas* analysis.  *Richardson v. Loyola Coll. in Md., Inc.*, 2005 WL 3619423 *1 (D.C. Cir. 2005).  In the Third Amended Complaint, Plaintiff claims that she was subjected to both direct discrimination and disparate treatment.  3rd Am. Compl. at ¶¶ 199, 200.  However, Plaintiff offers no factual allegations to support either claim.  She has not made any factual allegation suggesting that the District engaged in direct, intentional discrimination, nor has she made any

factual allegation suggesting that she was treated different than similarly situation individuals

outside of her protected class.

Because Plaintiff has no standing to bring a claim under Title VI and because the Third

Amended Complaint fails to plead a claim pursuant to Title VI, the Court should dismiss Claims

19 and 20.

## IX.     Plaintiff has failed to state a claim for violations of the DCHRA (Claims 21 and 22)

Plaintiff asserts claims of violations of the DCHRA for both the February 15, 2016 arrest

and the April 12, 2016 arrest.  Plaintiff cites only generally to the DCHRA by stating that the Act

"prohibits discrimination by reason of race, color, and national origin."  3rd Am. Compl. at ¶ 203.

But Plaintiff fails to identify any *specific prohibition* under the DCHRA that she claims the

District violated in the present matter.  Moreover, as with Plaintiff's Title VI claim, Plaintiff has

failed to make factual allegations that evince any discriminatory conduct – either direct

discrimination or disparate treatment.

Because the Third Amended Complaint fails to plead a claim pursuant to the DCHRA,

the Court should dismiss Claims 21 and 22.

## X.     This Court lacks subject matter jurisdiction to grant Plaintiff's request for expungement of her arrest record

In her "Prayer for Relief" in the Third Amended Complaint, Plaintiff seeks an order from

this Court to expunge her arrest record.  Arrest records are maintained by the Clerk of the D.C.

Superior Court, and motions to seal those records are to be filed with the Superior Court.  D.C.

Code §§ 16-801 *et seq*.  Rule 118 of the District of Columbia Superior Court Rules of Criminal

Procedure states in part:

> Any person arrested for the commission of an offense punishable by the District
> of Columbia Code, whose prosecution has been terminated without conviction
> and before trial, may file a motion to seal the records of the person's arrest within

120 days after the charges have been dismissed. For good cause shown and to prevent manifest injustice, the person may file a motion within 3 years after the prosecution has been terminated or at any time thereafter if the government does not object.

Super. Ct. R. Crim. P. 118(a).  The District Court "is not a reviewing court and lacks jurisdiction to compel another court to act."  *Lopes v. Ocwen Loan Servicing, LLC*, 2015 WL 474954 *1 (D.D.C. 2015).  Here, Plaintiff improperly seeks an order compelling the Superior Court to act to expunge Plaintiff's arrest record.  In an analogous situation, a D.C. prisoner seeking to attack his Superior Court sentence "has no recourse to a federal judicial forum unless the local remedy is 'inadequate or ineffective to test the legality of his detention.'"  *Byrd v. Henderson,* 119 F.3d 34, 36-37 (D.C. Cir. 1997) (internal footnote omitted).

Because Plaintiff is not prevented from filing a motion to seal her arrest record in the Superior Court pursuant to Criminal Rule 118(a) and she has not alleged that such a remedy is inadequate or ineffective, the Court should dismiss Plaintiff's request for expungement of her arrest record.

## CONCLUSION

For all of the reasons stated above, the Court should dismiss in part Plaintiff's Third Amended Complaint.  Specifically, the Court should dismiss Claims 1-4, 7-12, 14, 15, and 17-22 against the District.  Additionally, the Court should not allow Plaintiff to request expungement of her arrest record.

Date:  September 10, 2018                          Respectfully submitted,

                                                  KARL A. RACINE
                                                  Attorney General for the District of Columbia

                                                  GEORGE C. VALENTINE
                                                  Deputy Attorney General
                                                  Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/ Philip A. Medley
PHILIP A. MEDLEY [1010307]
DAVID A. JACKSON [471535]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-6626
(202) 741-5920 (fax)
philip.medley@dc.gov

Attorneys for the District